## Horn *v.* White.

5-750                                              284 S. W. 2d 122

Opinion delivered November 14, 1955.

[Rehearing denied December 19, 1955.]

*Richard W. Hobbs,* for appellant.

*R. Julian Glover,* for appellee.

ED. F. McFADDIN, Associate Justice. This is an election contest; and after disposing of the issues between the parties we will consider which Act is governing as between Act 211 of 1953 and Act 241 of 1953.

Appellant, Amos Horn, and appellee, S. D. White, were rival candidates for the office of County Judge of Montgomery County in the General Election on November 2, 1954. On the face of the official returns White received a majority of the votes cast; and thereafter Horn instituted this action as an election contest under § 3-1201 *et seq.* Ark. Stats. White moved to have the contest dismissed, claiming that Horn had not complied with the law in having his name placed on the ticket as an independent candidate at the General Election. White showed that Horn had filed his certificate of nomination *only 20 days* before the General Election. That was the minimum time, as provided by § 3-264 Ark. Stats.; but Act 211 of 1953 made the minimum time for such filing to be *45 days,* and Act 241 of 1953 made the minimum time for such filing to be *30 days.* White claimed that under either of the 1953 Acts Horn's filing was too late. The Trial Court sustained White's motion to dismiss; and Horn has appealed.

I. *Appellant's Nominating Petition Was Filed Too Late.* Horn's only argued[1] grounds for reversal are: (a) that said Acts 211 and 241 are so conflicting that they cancel out each other and both are void; and (b)

---

[1] For reasons best known to themselves, neither party has mentioned the possible application of the well-known rule that certain provisions of election laws are *mandatory* before the election and merely *directory* after the election. See *Orr* v. *Carpenter,* 222 Ark. 716, 262 S. W. 2d 280. It might be that the rule stated in 18 Am. Jur. 263 could have been invoked by the appellant. That rule states: "It is a firmly established general rule that objections to irregularities in the nomination of a candidate should be taken prior to election." But the fact remains that no such suggestion of the *mandatory-directory* rule has been made by the parties herein: so we decide the case on the issues as briefed. This opinion, however, does not prevent the possible application of the *mandatory-directory* rule if it should ever be urged in a case like this one.

that the law still remains as it appears in § 3-264 Ark. Stats. We find ourselves unable to agree with this argument. Under either of the 1953 Acts Horn's nominating petition was filed too late; and at all events one or the other of the 1953 Acts is governing. It is true that there is some conflict between the two Acts of 1953 but we hold—as hereinafter developed—that Act 211 of 1953 is the governing law and that Horn failed to file his petition within the 45-day minimum time limit fixed in that Act.

II. *Election Law Question.* Ordinarily an opinion of this Court need go no further than has been above stated; but we are now constrained to go further because the question posed by the parties (that is, whether Act 211 of 1953 or Act 241 of 1953 is the governing law) relates to an interpretation of certain provisions in our election laws; and it is the policy of this Court to settle such questions for the future guidance of the public. In *Carroll* v. *Schneider,* 211 Ark. 538, 201 S. W. 2d 221, after holding that the question raised in the particular case was moot, the late and beloved Justice Frank G. Smith, in declaring what was the election law, said:

"There is here a question of practical importance and of great public interest, and if not now decided, some other candidate may be deprived of the right to run for a public office and his right to do so may become a moot question before it could be decided, on account of unavoidable delay in the law."

So here, with an election to be held before the next regular convening of the Legislature, there will remain the confusion as to which of the Acts of the 1953 Legislature is to govern; and substantial rights of other parties may be lost unless we go further and here decide the question. We recognize that there is a conflict be-

tween Act 211 of 1953 and Act 241 of 1953;[2] and we first give the germane laws prior to 1953 and then the changes sought to be accomplished by each of the 1953 Acts.

### Law Prior to 1953

(a)   Section 3-264 Ark. Stats. provided: "... certificates of nomination herein directed to be filed with the County Election Commissioners shall be filed not more than sixty (60) days and not less than fifteen (15) days before the election."

(b)   Section 3-806 Ark. Stats. provided that not less than *18* days before each election the Secretary of State shall certify to all the Election Commissioners full lists of all candidates to be voted for in their Counties as the nomination had been certified to him.

(c)   Section 3-807 Ark. Stats. made the same time limit of 18 days for certification of constitutional amendments.

(d)   Section 3-824 Ark. Stats. (being Sec. 7 of Act 353 of 1949) provided that the order of the names of the candidates on the ballot would be determined by lot at a public meeting of the County Board of Election Commissioners, but gave no minimum time for the holding of such public meeting.

### Changes by Act 211 of 1953.

The Act 211 of 1953 changed each of the aforementioned provisions in the following regards:

(a)   Section 3-264 was changed to read, in part: ". . . certificates of nomination herein directed to be filed with the County Election Commissioners shall be filed not more than sixty (60) days and not less than forty-five (45) days before the election."

---

[2] Here is the Legislative history of the two Acts:

|  | Act. 211 (S.B. 26) | Act 241 (S.B. 7) |
|---|---|---|
| Introduced: | Jan. 14 | Jan. 12 |
| Passed Senate: | Feb. 5 | Feb. 23 |
| Passed House: | Feb. 20 | Feb. 24 |
| Enrolled: | Feb. 26 | Mch. 2 |
| Delivered to |  |  |
| Approved by |  |  |
| Governor: | Feb. 26 | Mch. 2 |
| Governor: | Mch. 4 | Mch. 6 |

(b) Section 3-806 was changed to provide that not less than 42 days before the election the Secretary of State was to certify to the County Election Commissioners the full lists of all candidates to be voted for in their respective Counties.

(c) Section 3-807 was changed to make the minimum requirement for certification on constitutional amendments and other questions to be 42 days.

(d) Section 3-824 was changed to provide that the meeting of the County Board of Election Commissioners to determine the order of the names of the candidates on the ballot should be held ". . . . not less than forty (40) days prior to such General Election."

In short, Act 211 of 1953 was a fairly comprehensive Act affecting four different sections of the law and fixing a definite uniform minimum time limit for certain acts to be done.

*Changes by Act 211 of 1953.*

Act 241 did not purport to amend Act 211, but rather to amend only § 3-264 Ark. Stats., and related only to the time for filing certificates of nomination. The portion of said Act 241 here germane reads, in part:

"Certificates of nomination herein directed to be filed with the County Election Commissioners shall be filed not more than sixty (60) days and not less than thirty (30) days before the election."

*Resolving The Conflict Between The 1953 Acts.*

The conflict between Act 211 and Act 241 is that Act 211 makes the minimum time for filing certificate of nomination to be 45 days, and Act 241 makes the minimum time to be 30 days. Our problem is to resolve the conflict. The books are filled with cases giving rules for the construction of conflicting statutes, but the *primary rule* of statutory construction is for the Court to ascertain the Legislative intent;[3] and in ascertaining

---

[3] See *McDaniel* v. *Ashworth*, 137 Ark. 280, 209 S. W. 646; and the many other cases collected in West's Ark. Digest "Statutes," Key No. 180.

the Legislative intent, the Courts resort to secondary rules of construction. Some of these are the "public policy" rule and the "harmony" rule. Illustrative of these, we quote from the early case of *Hill* v. *Mitchell,* 5 Ark. 608:

"We lay down this general principle upon the subject: if two statutes passed at the same time, *in pari materia,* are opposed to each other, and one of them relates to a primary interest of public policy, and the other, to a secondary consideration, that which is greater in principle must govern."

And in *Hackett City* v. *State,* 56 Ark. 133, 19 S. W. 426, Chief Justice Cockrill quoted the language of Judge Brewer:

" 'Where there is no way of reconciling conflicting clauses of a statute, and nothing indicating which the Legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with other legislation on the same subject.' "

There is another rule of statutory construction which is that, as between two conflicting statutes passed at the same session, ordinarily the statute last passed is to govern;[4] but this "last passed" rule is admitted to be merely a rule of statutory construction and must and does yield when it is clear that the Legislature intended the earlier Act passed at the same session, to be the governing Act.[5] In 82 C. J. S. 836, in discussing conflicting or inconsistent statutes and, after recognizing the rule of construction that generally "the last Act passed" is the governing Act, the holdings of the various cases are, however, summarized in this language:

"Where Acts passed at the same session contain conflicting clauses, the whole record of legislation will be examined to ascertain the Legislative intent, and such

[4] See *Roberts* v. *Tice,* 198 Ark. 397, 129 S. W. 2d 258, 122 A. L. R. 1177.

[5] This is particularly true when, as here, neither Act contained an emergency clause and both Acts went into effect the same day—that is, 90 days after the adjournment of the Legislature.

intent, if ascertained, will be given effect, regardless of priority of enactment.''[6]

With these rules of construction in mind, we turn to a study of the Acts 211 and 241 to ascertain the *Legislative intention.* As aforesaid, the only conflict between Act 211 and Act 241 is that Act 211 makes the minimum time—for filing certificate of nomination—to be 45 days and Act 241 makes the minimum time to be 30 days. Thus the Act 241 affected only one part of the law. But if we give effect to Act 241 and fix 30 days as the minimum time for filing the certificate of nomination, then under Act 211 the Secretary of State must make the certification to the County Election Commissioners 42 days before the election, which would be 12 days before the last day for filing the certificate of nomination. Likewise, under Act 211, the drawing for places on the ticket would be 40 days before the election, which would be 10 days before the last day the candidate's name could be certified by the Secretary of State under Act 241. Furthermore, under Sec. 5 of Act 211, the absentee ballots for electors in the armed forces might be circulated *before* the Secretary of State had ever certified out the full list of candidates, if the 30-day minimum in Act 241 of 1953 should be followed.

It is therefore clear that Act 241 of 1953 presents an unworkable Act because it does not attempt to cover all of the matters in Act 211 and leaves the time table in confusion, as hereinbefore stated.

---

[6] The Illinois Court in *Potosi* v. *Metropolitan,* 95 N. E. 2d 529, quoted this language: "The rule that where two conflicting enactments are passed at the same session, the latest enactment in point of time will prevail, as well as all other rules of construction dealing with repeals by implication, are mere canons of construction. Such canons are only aids to the ascertainment of the legislative intent and must yield to such intent if the same be otherwise. They should never be followed to the extent of defeating or overriding the definite intent of the legislature."

In the case of *Bowles* v. *Crew,* 59 Fed. Supp. 809, the U. S. Dist. Court of California used this clear language: "In resolving claimed conflict between Legislative enactments, it should be our aim to envisage the completeness of the Legislative scheme and to avoid an interpretation which would destroy it as a harmonious whole."

To the same effect, see also *Southwark Bank* v. *Commonwealth,* 26 Pa. 446.

In the light of all of the foregoing, it is clear that the *intent* of the Legislature was to fix a definite time table schedule. . The Act 211 considered not only the certificates of nominations, but also the certification of constitutional amendments, the drawing of places on the ticket, and the sending out of absentee ballots; whereas the Act 241 merely affected the time for filing certificate of nomination. It would be putting form above substance and the letter above the spirit of the law to hold that Act 241 changed Act 211. We therefore find and declare that the *Legislative intent* was that Act 211 be the governing Act; and we so declare and hold Act 241 to be nullified by Act 211. See *Jackson* v. *State,* 45 Ark. 158; *Snow* v. *Riggs,* 172 Ark. 835, 290 S. W. 591; and 50 Am. Jur., p. 484 *et seq.* This disposes of the election question and provides a guide for the action of officials.

Affirmed.